UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| APRIL R. ON BEHALF OF JAMES MICHAEL R., SR., | |
| Plaintiff, | No. 23 CV 1577 |
| v. | Magistrate Judge McShain |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff April R., on behalf of James Michael R., Sr., appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion for summary judgment [13][1] is granted and the decision denying the application for benefits is remanded to the agency for further administrative proceedings. 42 U.S.C. § 405(g).

**Background**

On September 26, 2011, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of December 1, 2010. [11-1] 138, 446. Plaintiff's claims were denied initially on November 21, 2011, and upon reconsideration on February 10, 2012. [*Id.*] 138. Plaintiff requested a hearing, which was held on February 21, 2013 before administrative law judge (ALJ) Bassett. [*Id.*] 76, 138. On March 15, 2013, ALJ Bassett issued an unfavorable decision finding plaintiff not disabled from December 1, 2010, the alleged onset date, through December 31, 2012, the date last insured. [*Id.*] 138–50. The Appeals Council denied review on February 24, 2014 and again on March 14, 2014. [*Id.*] 8–13. Plaintiff appealed to the Northern District of Illinois.[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [11], which refer to the page numbers in the bottom right corner of each page.
[2] On February 7, 2015, while the appeal was pending in the District Court, plaintiff tragically committed suicide. [11-1] 374, 445, 537. The District Court acknowledged that at the time of his 2013 decision, the ALJ did not know that plaintiff would commit suicide and noted that the court was "careful not to view the ALJ's decision with hindsight." [*Id.*] 445. The Social Security Administration (SSA) was notified that plaintiff was deceased. [*Id.*] 363, 478. On February 16, 2020, plaintiff's wife requested to be made a substitute party. [*Id.*] 363, 488–89.

[*Id.*] 441. On August 13, 2018, the District Court granted summary judgment in favor of plaintiff and remanded to the agency for further administrative proceedings. [*Id.*] 444–58. On January 17, 2020, the Appeals Council vacated the final decision and remanded to an ALJ. [*Id.*] 459–61. A second hearing was held before ALJ Bassett on July 23, 2020. [*Id.*] 363, 387–418. On August 5, 2020, ALJ Bassett issued an unfavorable decision finding plaintiff not disabled from December 1, 2010 through December 31, 2012.[3] [*Id.*] 363–81.

In the August 5, 2020 decision, the ALJ reviewed plaintiff's disability claim in accordance with the Social Security Administration's five-step, sequential evaluation process. *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023); *Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020); 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the December 1, 2010 to December 31, 2012 period. At step two, the ALJ found that plaintiff has the following severe impairments: bipolar disorder, attention deficit hyperactivity disorder, and alcoholism. At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. The ALJ found that plaintiff has moderate limitations in all four areas of functioning that make up the paragraph B criteria. Before turning to step four, the ALJ determined that plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand, remember and carry out simple job instructions in a routine work setting with few if any changes; occasionally interact with coworkers and supervisors, but must not participate in any collaborative joint projects with them or engage the public; unable to perform a fast paced job with mandatory numerically strict hourly production quotas, but capable of meeting end of the day employer expectations. At step four, the ALJ concluded that plaintiff was unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including industrial cleaner and store laborer. Accordingly, the ALJ found that plaintiff was not under a disability as defined in the Social Security Act from December 1, 2010 through December 31, 2012.[4]

The Appeals Council denied review on January 18, 2023, [11-1] 353–56, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955 & 404.981; *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021). Plaintiff timely

---

[3] As the relevant time period is December 1, 2010 through December 31, 2012, the ALJ's 2020 decision did not factor plaintiff's 2015 suicide into his decision. Nor does plaintiff argue on appeal that the ALJ erred in failing to do so. Accordingly, the Court does not consider this tragic event in its review of the ALJ's 2020 decision.

[4] Plaintiff's brief consistently refers to the period at issue as December 1, 2010 through February 7, 2015. [14] 2, 20. The Court presumes this is a typo, as the ALJ's decision on review before this Court noted that "[t]he relevant period before the undersigned is between the alleged onset date of December 1, 2010 and the date last insured of December 31, 2012" and made a disability finding as to that period of time. [11-1] 370, 372, 381.

appealed to this Court [1], and the Court has subject-matter jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).[5]

## Legal Standard

The Court reviews the ALJ's decision deferentially to "ensur[e] that substantial evidence supported the ALJ's decision and that the ALJ applied the correct legal standards." *Morales v. O'Malley*, 103 F.4th 469, 472 (7th Cir. 2024) (citing *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018)). Substantial evidence is "not a high threshold: it means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). "A reviewing court 'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (alteration in original) (quoting *Gedatus*, 994 F.3d at 900). But where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Dallas H. v. O'Malley*, No. 22 C 50432, 2024 WL 1158378, at *3 (N.D. Ill. Mar. 18, 2024) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## Discussion

Plaintiff argues that the ALJ erred in two ways: (1) the ALJ failed to properly weigh the medical opinion evidence and determine plaintiff's residual functional capacity; and (2) the ALJ failed to properly evaluate plaintiff's subjective statements. [14] 9–17.[6] Plaintiff requests that the Court reverse the ALJ's decision solely for an award of benefits because evidence of plaintiff's mental disability for the period at issue is overwhelming. [*Id.*] 20. Alternatively, plaintiff requests that the Court remand the case for an expedited hearing and decision before a different ALJ, "given the lengthy procedural history." [*Id.*]

The Court first addresses plaintiff's argument that the ALJ failed to properly assess the opinions of Dr. Rowles, plaintiff's treating provider. [14] 10–13. Plaintiff argues that the ALJ should have given Dr. Rowles' opinions controlling weight or, alternatively, that the ALJ erred because he failed to explain exactly what weight he gave Dr. Rowles' opinions. SSR 96-2p; 20 CFR 404.1527; 20 CFR 416.927. In granting plaintiff's first request for remand, Judge Coleman found, in relevant part, that the ALJ's 2013 decision failed to adequately explain its conclusion that Dr. Rowles'

---

[5] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge [8].
[6] Plaintiff also argues that the Appeals Council erred by failing to assign the case to a new ALJ upon remand. [14] 18–20. Plaintiff acknowledges that if the Court remands the case, the issue will be moot but raises the issue so it is not deemed waived in the event the Court denies remand. [*Id.*] 18. As the Court is remanding for further proceedings, it need not address this issue.

opinion was unpersuasive and not entitled to controlling weight. [11-1] 455–56. In denying plaintiff's request for further review of the ALJ's 2020 decision, the Appeals Council acknowledged Judge Coleman's order for reevaluation of Dr. Rowles' opinion under the treating physician rule, but found that although the ALJ "used the term persuasive, he considered and relied on the evidence pertaining to the period at issue to explain why Dr. Rowles' opinion was not accorded controlling weight." [11-1] 353–54.

For claims filed before March 27, 2017, the "Treating Physician Rule" applies, under which a treating physician's opinion is entitled to controlling weight if the opinion is both well supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527; *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *Edgar W. v. O'Malley*, No. 15 C 7571, 2024 WL 965179, at *3 (N.D. Ill. Mar. 6, 2024). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ cannot simply disregard the opinion, but must proceed to the second step and determine what specific weight it should be given after considering certain factors set forth in 20 C.F.R. § 404.1527. *Brown*, 845 F.3d at 252; *Wallace v. Colvin*, 193 F.Supp.3d 939, 946 (N.D. Ill. 2016). *See Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("The checklist is designed to help the administrative law judge decide how much weight to give the treating physician's evidence.") (citation omitted). "Because a treating physician has 'greater familiarity with the claimant's condition and circumstances,' an ALJ can only discount a treating physician's opinions based on good reasons supported by substantial evidence in the record." *Carol Z. v. Kijakazi*, No. 22-cv-50024, 2023 WL 2561616, at *4 (N.D. Ill. Mar. 17, 2023) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)). Plaintiff filed his claims on September 26, 2011, and the ALJ was therefore required to apply the treating physician rule.

The ALJ assessed two opinions from Dr. Rowles: a January 8, 2013 psychiatric report and an undated letter. *See* [11-1] 377–79 (citing [*id.*] 343–50, 564). First, the ALJ summarized Dr. Rowles' 2013 opinion and found it "not persuasive because it is unsupported by his own clinical findings." [*Id.*] 378. The ALJ noted that Dr. Rowles' "own progress notes reveal mostly unremarkable findings on mental status exams (1F, 3F, 5F, 6F and 7F), when the claimant is compliant with prescribed treatment." [*Id.*] The ALJ also found that "the course of treatment pursued by Dr. Rowels [sic] has not been consistent with what one would expect if the claimant were truly as limited as the psychiatrist has reported" and noted that plaintiff "received conservative and routine care with Dr. Rowels [sic] and was never psychiatrically hospitalized or admitted in the ER, due to his allegedly disabling mental impairments." [*Id.*] And the ALJ pointed out that Dr. Rowles' opinion "is at odds with" Dr. Rowles' decision to stop all of plaintiff's medications in November 2012 and documentation that plaintiff "was doing well despite being off his medications (7F/1)." [*Id.*] The ALJ concluded that for all of these stated reasons, the ALJ was "unable to give Dr. Rowles' opinion controlling weight, despite the fact that he is the treating

4

source, specialized in psychiatrist [sic] and has treated the claimant from April 2010 to January 2013." [*Id.*]

The Court notes that the ALJ's assessment of Dr. Rowles' 2013 opinion is largely unchanged from his 2013 decision, merely substituting observation that Dr. Rowles' opinion is at odds with his decision to stop plaintiff's medications in November 2012, [11-1] 378, for his conclusion that Dr. Rowles' conclusions were "not supported by other evidence of record, in particular the claimant's activities of daily living," [*id.*] 148. However, in response to Judge Coleman's observation that the ALJ "ignored the treatment notes" indicating that plaintiff "had good days and bad days," [11-1] 456, the ALJ added acknowledgment earlier in the decision that "the treatment notes document some waxing and waning of the claimant's symptoms." [*Id.*] 372, 375. Nevertheless, the ALJ found that any fluctuating symptoms were outweighed by "mostly intact findings on mental status exams during most of the office visits" and the ALJ's conclusion that plaintiff's symptoms were generally well-controlled with medications and therapy. [*Id.*] 372. The ALJ also found it "noteworthy" that the treatment notes during the relevant period "do not document severe exacerbations of bipolar or ADHD symptoms, which would require more aggressive forms of treatment, such as ER, partial hospitalization or inpatient admissions." [*Id.*] 375. *See also* [*id.*] 372 (noting that plaintiff's "mental condition has not required ER visits, partial hospitalization or inpatient admissions during the relevant period").

There are two points in the ALJ's conclusions that the Court would like to address, some of which overlap with plaintiff's arguments concerning the ALJ's evaluation of plaintiff's subjective statements and overall RFC determination. First, the Court finds it notable that every time the ALJ found that plaintiff's symptoms were well-controlled with medication and therapy, he included the qualification that this was only the case when plaintiff was compliant with the prescribed treatment and not using substances. *See* [11-1] 372 ("Additionally, the treatment notes reveal that, on balance, the claimant's symptoms have been generally well maintained with medications and therapy, *when the claimant was compliant with prescribed treatment and did not use substances*."), 374 ("As noted above, the treatment notes document some waxing and waning of his symptoms, *mostly due to non-compliance to prescribed treatment*. However, *when the claimant took his medications as prescribed and did not use substances*, the office notes reveal that, on balance, his symptoms were well controlled with medications and therapy."), 375 ("During the relevant period, the treating sources have not changed their treatment plan, which consisted of medications and therapy, indicating that, on balance, the claimant's symptoms were generally well managed with conservative care, *when he is compliant with prescribed treatment*."), 376–77 (concluding that plaintiff was capable of the subject RFC based in part on "treatment notes documenting some waxing and waning of his symptoms, in part due to *non compliance to prescribed treatment (i.e., not taking his medications as prescribed and/or using alcohol and marijuana)*," "treatment notes documenting that his symptoms were generally well managed with medications and therapy, *when*

5

*the claimant was compliant with treating sources' recommendations*," and "treatment notes showing improvement of his symptoms, *when he was compliant with prescribed treatment*").

It is important to recognize that "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce[.]" *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). This can be an especially crucial consideration in the mental health context. The Seventh Circuit has "often observed that bipolar disorder . . . is by nature episodic and admits to regular fluctuations even under proper treatment." *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) (collecting cases). *See also Scott*, 647 F.3d at 739–40 ("Moreover, the ALJ's analysis reveals an all-too-common misunderstanding of mental illness. The very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms, so any single notation that a patient is feeling better or has had a 'good day' does not imply that the condition has been treated."); *Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) ("Many mental illnesses are characterized by 'good days and bad days,' rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms."). Therefore, an ALJ should proceed with caution in relying on normal mental status examination findings and improvement with treatment/medication to find that a claimant's symptoms are not as severe as alleged and that he is capable of gainful employment:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.

*Bauer*, 532 F.3d at 609. At the very least, an ALJ must articulate how and why he weighed record evidence of a claimant's "good days" more heavily than evidence of a claimant's "bad days," particularly where there is evidence in the record of aggravating factors contributing to an inability to comply with the prescribed treatment that controls his symptoms. The ALJ concluded that alcoholism was one of plaintiff's severe impairments. [11-1] 365. The ALJ also acknowledged that during a December 15, 2010 visit with Therapist Adema, plaintiff reported that he was "finding sobriety difficult." [*Id.*] 372, 375 (citing [*id.*] 306). The undated treating source statement from Dr. Rowles that the ALJ gave "no weight" specifically stated that "[s]ome patients have better controlled Bipolar illness with their medications but unfortunately this has not been the case with James, as we have struggled to find a treatment regimen to appropriately control his symptoms." [*Id.*] 378–79, 564.

It is also here that plaintiff's argument that the ALJ erred in evaluating plaintiff's subjective statements overlaps with plaintiff's arguments regarding the ALJ's assessment of Dr. Rowles' opinions and ultimate RFC determination. SSR 16-

6

3p acknowledges that "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." 2017 WL 5180304, at *9 (Oct. 25, 2017). But the regulation also instructs that ALJs "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* Courts and SSR 16-3p recognize a variety of reasons why individuals do not comply with or seek treatment in a manner consistent with their complaints, including lack of insurance, lack of access, inability to afford treatment, side effects, etc.[7] Possible reasons may also be directly related to the fact that the individual suffers from one or more mental impairments. *Orienti v. Astrue*, 958 F.Supp.2d 961, 977 (N.D. Ill. 2013) ("ALJs have a duty to consider factors like inability to travel, *mental illness*, or economic constraints that may have prevented claimants from seeking receiving medical care.") (emphasis added). The regulations recognize, for example, that due to mental impairments, "an individual may not understand the appropriate treatment for or the need for consistent treatment of his or her impairment" or that "an individual may not be aware that he or she has a disorder that requires treatment." SSR 16-3p, 2017 WL 5180304, at *10. "The Seventh Circuit has emphasized that 'mental illness in general and bipolar disorder in particular . . . may prevent the sufferer from . . . submitting to treatment.'" *Barnes v. Colvin*, 80 F.Supp.3d 881, 886 (N.D. Ill. 2015) (quoting *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006)). For this reason, the Seventh Circuit has joined several other circuits "in holding that an ALJ's minimum duty to consider possible explanations for noncompliance issues—before drawing a negative credibility inference—is heightened with claimants that have significant mental impairments." *Rebecca S. v. Saul*, No. 19-cv-00233, 2020 WL 13605182, at *8 (S.D. Ind. Aug. 31, 2020). And courts recognize that individuals with mental impairments "are often incapable of taking their prescribed medications consistently." *Wamser v. Colvin*, No. 12 C 6197, 2013 WL 5437352, at *9 (N.D. Ill. Sept. 30, 2013) (quoting *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 351 (7th Cir. 2010)). Here, for example, the ALJ acknowledged that plaintiff reported that he "needed reminders taking medications" and that his wife reminded him to take his medications. [11-1] 366, 369, 377.[8]

Second, "this circuit has cautioned against relying on a claimant's lack of psychiatric hospitalizations as evidence against a finding of disability." *Pamela Z. v. O'Malley*, No. 21 CV 3270, 2024 WL 1858450, at *4 (N.D. Ill. Apr. 29, 2024). "[A] lack of inpatient treatment does not necessarily indicate that a claimant 'is therefore

---

[7] The Court notes that during the February 21, 2013 hearing, plaintiff's attorney indicated that plaintiff "has not been able to get as much psychiatric treatment as he would like, for monetary reasons and insurance reasons" and plaintiff testified that he does not have the money to see his psychiatrist when he needs to. [11-1] 85, 98. Plaintiff also testified to side effects of his medication, but agreed that his "medication helps." [*Id.*] 81–82, 91, 96.

[8] *But see* [11-1] 99 (plaintiff's 2013 hearing testimony that he remembers to take his medications).

capable of gainful employment.'" *Martinez v. Kijakazi*, 71 F.4th 1076, 1083 (7th Cir. 2023) (quoting *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015)). After all, "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt*, 781 F.3d at 876. Like in the *Voigt* case, during the relevant period,[9] plaintiff was "none of these things . . . [b]ut it doesn't follow, as the administrative law judge may have thought, that [plaintiff was] therefore capable of gainful employment." 781 F.3d at 876. *See Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011) ("And the fact that Punzio is no longer suicidal and is not plagued by depression 24 hours a day says little about her abilities to understand and remember short instructions and to maintain attention for a two-hour segment."); *Mattson v. Berryhill*, No. 16 C 10533, 2017 WL 5011890, at *5 (N.D. Ill. Nov. 2, 2017) (noting that "[i]t is plausible that one may be unable to work but not need psychiatric hospitalization"); *Seals v. Saul*, No. 19-C-1244, 2020 WL 5229679, at *10 (E.D. Wis. Sept. 2, 2020) ("It does not follow that a person who avoids that level of care is capable of gainful employment."); *Adams v. Berryhill*, No. 17-cv-47, 2017 WL 4349718, at *12 (N.D. Ind. Oct. 2, 2017) ("While inpatient hospitalization can be indicative of serious mental health symptoms, a lack of hospitalization does not necessarily mean that the individual's symptoms are not disabling.").

"Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). *See Campbell*, 627 F.3d at 308 ("Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she has to decide what weight to give that opinion."). "Rather, the ALJ was required to explicitly consider the details of the treatment relationship and explain the weight he was giving the opinion." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). In other words, this is a distinct two-step process. *John B. v. Kijakazi*, No. 20-cv-50137, 2023 WL 4762602, at *2 (N.D. Ill. July 26, 2023); *Wallace*, 193 F.Supp.3d at 946. The Court is not convinced that the ALJ complied with step two. Although it is clear the ALJ found Dr. Rowles' 2013 opinion not entitled to controlling weight (step one), the ALJ's decision did not articulate that the ALJ "determine[d] what *specific* weight it should be given by using the checklist." *Wallace*, 193 F.Supp.3d at 946 (emphasis in original) (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)). The ALJ stated that he found Dr. Rowles' 2013 opinion "not persuasive." Does this mean that he did not give the opinion any weight or that he only gave the opinion little weight? In assessing other opinions, the ALJ was clearer; he gave the mental

---

[9] The ALJ's decision found that "[a]s for suicidal ideations, during the relevant period, all treatment notes showed that [plaintiff] has denied them during office visits (1F/3, 4)." [11-1] 376. *See* [*id.*] 373 (noting that in May 18, 2011 and August 30, 2011 progress notes, "suicidal ideas or intentions were all denied convincingly" and that at a November 20, 2012 visit, plaintiff "denied suicidal and self-injurious idea or intentions and homicidal ideas"). But the ALJ did acknowledge plaintiff's testimony at the 2013 hearing that he "had a plan to kill himself" and "had suicidal ideations on a daily basis." [*Id.*] 369, 376. *See* [*id.*] 94–96 (2013 hearing transcript).

assessment of the state agency consultants "weight"[10] and stated that he gave Dr. Rowles' other opinion in the undated letter "no weight." [11-1] 377, 378. Defendant argues that this is mere semantics, but the Court does not agree. On review, the Court cannot tell to what extent, if any, Dr. Rowles' 2013 opinion factored into the ALJ's RFC and disability determination.

In assessing what weight a treating provider's opinion does merit, "[t]he regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion." *Edgar W.*, 2024 WL 965179, at *3; 20 C.F.R. § 404.1527. The regulations specifically state that ALJs "consider *all* of [these] factors in deciding the weight [to] give to any medical opinion." 20 C.F.R. § 404.1527 (emphasis added). All of the ALJ's stated explanations for finding Dr. Rowles' 2013 opinion "not persuasive" go toward the fifth factor, *i.e.*, the consistency and support for his opinions, focusing on the internal supportability of Dr. Rowles' opinion and consistency with Dr. Rowles' treating notes in the medical record. The ALJ's concluding sentence did state that he did not give Dr. Rowles' 2013 opinion controlling weight "despite the fact that he is the treating source, specialized in psychiatrist [sic] and has treated the claimant from April 2010 to January 2013." [11-1] 378. But "[g]enerally acknowledging the regulatory factors is insufficient." *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021). The ALJ's decision does not reflect an analysis of the factors. Merely noting that Dr. Rowles treated plaintiff from April 2010 to January 2013 does not explore the nature and extent of the treatment relationship, nor did the ALJ explicitly discuss the frequency of examination. Although the ALJ acknowledged that Dr. Rowles is a psychiatrist, he did not assess plaintiff's emphasis that Dr. Rowles is a specialist in bipolar/mood disorders, instead seeming to substitute his own opinion at times to question Dr. Rowles' opinion, including that "Dr. Rowels' [sic] own reports fail to reveal the type of significant clinical abnormalities one would expect if the claimant were in fact disabled, and psychiatrist did not specifically address this weakness" and that "the course of treatment pursued by Dr. Rowels [sic] has not been consistent with what one would expect if the claimant were truly as limited as the psychiatrist has reported." [11-1] 378. See [*id.*] 455 (Judge Coleman's 2018 remand order criticizing the ALJ's first decision for "relying on his own perception of 'what one would expect to see,' without explaining a basis for his expectations"). And the ALJ's assessment of the weight to give Dr. Rowles' 2013 opinion did not include any discussion of the types of tests performed by Dr. Rowles. Although courts "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating

---

[10] Although the ALJ's decision states that he gave "weight" to the opinions of the state agency consultants, it is likely that there is a word missing and the ALJ actually gave "little" or "no" weight to these opinions, as the rest of the ALJ's assessment noted that these opinions conflicted with the ALJ's findings that plaintiff had mental impairments and that new evidence was admitted into the record after the state agency consultants rendered their opinions. [11-1] 377; [14] 10; [21] 3.

source's medical opinion 'within the multifactor framework delineated' in the regulation." *Ray*, 861 F. App'x at 105 (citing *Karr*, 989 F.3d at 512; *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018)). And the Court is not convinced that "the ALJ's reasoning sufficiently accounted for the substance of the prescribed factors." *Id.* at 106. Rejecting a treating physician's opinion "without considering the regulatory factors" is "a reversible error in itself." *Deborah A. M. v. Saul*, No. 19 C 2380, 2019 WL 6893006, at *3 (N.D. Ill. Dec. 18, 2019). *See Wallace*, 193 F.Supp.3d at 946 ("As for the second step of the treating-physician rule, the ALJ did not explicitly apply the checklist. In this Court's view, that failure alone is a ground for a remand.").

In evaluating Dr. Rowles' undated treating source statement,[11] [11-1] 564, the ALJ provided even less analysis of the regulatory factors. The ALJ stated that he gave this opinion "no weight because statements regarding inability to work are reserved to the Commissioner." [*Id.*] 379. *See* [*id.*] 564 ("However by definition, the illness inevitably will result in severe mood swings that make gainful, consistent employment an impossibility. . . . The severity of the Bipolar illness especially, is such that I feel he is totally disabled and has been since the onset of our treatment."). Although the ALJ was correct that "the ultimate question of whether a claimant is disabled to a degree to qualify for benefits is, indeed, a matter reserved to the Commissioner . . . that's not a valid reason to accord a treating physician's opinion little weight." *Larson v. Colvin*, 26 F.Supp.3d 798, 808 (N.D. Ill. 2014) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014); *Garcia v. Colvin*, 741 F.3d 758, 760 (7th Cir. 2013)). *See also Denise E. v. Saul*, No. 18 C 8190, 2020 WL 2557402, at *5 (N.D. Ill. May 20, 2020); *McDonald v. Berryhill*, No. 16 C 1809, 2017 WL 3720176, at *8 (N.D. Ill. Aug. 29, 2017); *Minett v. Colvin*, No. 13 CV 4717, 2015 WL 7776560, at *3 (N.D. Ill. Dec. 2, 2015). Rather, the answer to that question "depends on the applicant's physical and mental ability to work full time, and that is something to which medical testimony is relevant and if presented can't be ignored." *Garcia*, 741 F.3d at 760. Nor were statements to this effect the only opinions Dr. Rowles provided in the undated letter. Dr. Rowles explained that the letter expanded on the information he submitted in his earlier statement and acknowledged that some of his treatment notes "did not indicate severity of symptoms consistent with" a diagnosis of Bipolar I disorder and ADHD and "that some of the notes did[.]" [11-1] 564. Dr. Rowles provided clarification on the "good days and bad days" nature of bipolar disorder and plaintiff's specific case:

> To clarify, a patient with Bipolar disorder is not always symptomatic 24 hours a day every day. There can be weeks or sometimes months of relative stability. However, by definition, the illness inevitably will result in severe mood swings that make gainful, consistent employment an impossibility. Some patients have better controlled Bipolar illness

---

[11] The index of documents attached to the administrative record indicates that the letter is from February 27, 2014, but the letter itself is undated. *See* [11-1] index page 4, 564.

> with their medications but unfortunately this has not been the case with James, as we have struggled to find a treatment regimen to appropriately control his symptoms. Bipolar disorder is characterized by mood swings that can last weeks to months of extreme irritability and impulsivity that typically results in severe interpersonal difficulties. Also there can be episodes of a more depressive nature that can be severe to the point a person socially withdraws and doesn't leave the home. All of the above symptoms have unfortunately been part of James' illness. Lastly, he deals with attention deficit hyperactivity disorder which impairs his attention and concentration which just adds to his difficulties.

[*Id.*][12] Apart from assigning "no weight" to Dr. Rowles' letter because it opined on inability to work, the only other statements that the ALJ addressed were Dr. Rowles' opinions that plaintiff "would be socially withdrawn and not leaving the house and experiencing periods of extreme irritability and impusivity [sic]," which the ALJ did not seem to find persuasive because Dr. Rowles' "own treatment notes addressing the relevant period do not document significant social isolation, agoraphobia, serious ongoing issues with temper control or anger, and impulsivity." [11-1] 379. Beyond providing the same boilerplate conclusion that the ALJ could not give this opinion controlling weight despite the fact that Dr. Rowles "is the treating source, specialized in psychiatrist [sic] and has treated the claimant from April 2010 to January 2013," the ALJ did not evaluate the regulatory factors under 20 C.F.R. § 404.1527 or explain what weight he gave to the other statements in Rowles' undated treating source statement. This is reversible error. *Wallace*, 193 F.Supp.3d at 946; *Deborah A. M.*, 2019 WL 6893006, at *3.

Nor can the Court find that any error by the ALJ is harmless, as the assessment of Dr. Rowles' opinions as plaintiff's treating provider is significant to the ALJ's conclusion that plaintiff was not disabled during the relevant period, particularly because the ALJ found that no opinion evidence in the record warranted much or any weight. [11-1] 377–79. The Court cannot "predict with great confidence" what effect the ALJ's proper evaluation of Dr. Rowles' opinions might have on the ALJ's assessment of plaintiff's limitations and RFC determination as a whole. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). Furthermore, defendant does not argue that any error in the ALJ's evaluation is harmless. Such an argument is therefore forfeited. *See James M. v. Kijakazi*, No. 20 CV 2082, 2023 WL 3652862, at *7 n.6 (N.D. Ill. May 25, 2023); *Arej v. Sessions*, 852 F.3d 665, 669 (7th Cir. 2017) ("The government has not raised harmless error here, so that argument is waived.") (Sykes, J. concurring).

---

[12] The Court acknowledges that the ALJ's decision included a full summary of the contents of Dr. Rowles' undated letter before assigning it no weight. [11-1] 378. But "a summary is not a substitute for analysis." *Craig R. v. O'Malley*, No. 23 C 50035, 2024 WL 1363664, at *3 (N.D. Ill. Mar. 29, 2024).

11

Because the Court is remanding on this basis, it does not address plaintiff's other arguments. However, this should not be construed as a finding that the ALJ did or did not err in the other ways identified by plaintiff. The Court acknowledges plaintiff's request that the Court should reverse the Commissioner's decision solely for an award of benefits. [14] 20. "An award of benefits without remand, although permissible . . . is something that is not 'normally' done." *Nimmerrichter v. Colvin*, 4 F.Supp.3d 958, 973 (N.D. Ill. 2013) (citing *Mueller v. Astrue*, 493 F. App'x 772, 777 (7th Cir. 2012)). *See Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018) (stating that courts order an award of benefits "in unusual cases"). It "is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Israel v. Colvin*, 840 F.3d 432, 442 (7th Cir. 2016) (quoting *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005)). *See also Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (same); *Spaulding v. Colvin*, No. 14 CV 5255, 2015 WL 2454400, at *3 (N.D. Ill. May 22, 2015) (noting that "frustration with the SSA is not itself an adequate ground for the court to order the payment of benefits"). It is plaintiff's burden to "extinguish [any] lingering doubt regarding his qualification for disability benefits[.]" *Allord*, 631 F.3d at 417–18; *Spaulding*, 2015 WL 2454400, at *3. Beyond simply stating that the evidence of disability is "overwhelming," plaintiff provides no argument as to why this case qualifies for an award of benefits rather than remand for further administrative proceedings and the Court sees no need to depart from the norm.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment [13] is granted, the decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: May 28, 2025**